MARK J. BOURASSA, ESQ. (NBN 7999)
**THE BOURASSA LAW GROUP**
2350 W. Charleston Blvd.
Las Vegas, Nevada 89102
Telephone: (702) 851-2180
Facsimile: (702) 851-2189
Email: *mbourassa@blgwins.com*

*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ELIZABETH RENTERIA, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>CULINARY WORKERS UNION LOCAL 226, a labor organization; UNITE HERE EDUCATION AND SUPPORT FUND, a domestic nonprofit corporation; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No.:<br><br>**VERIFIED COMPLAINT AND JURY DEMAND** |

Plaintiff ELIZABETH RENTERIA (hereinafter "Plaintiff"), by and through her counsel of record, The Bourassa Law Group, hereby submits her Verified Complaint against Defendants CULINARY WORKERS UNION LOCAL 226 and DOES 1 through 20, and each of them, and alleges as follows:

## I.
## INTRODUCTION

1. Plaintiff brings this action against Defendants for sexual harassment, quid pro quo sexual harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964 and Nevada state law.

## II.
## THE PARTIES

2. Plaintiff is, and at all times relevant hereto was, a natural person who resides in Clark County, Nevada.

3. Defendant CULINARY WORKERS UNION LOCAL 226 (hereinafter the "Union" or "Defendant Union") is, and at all times relevant hereto was, a labor organization operating in the State of Nevada.

4. Defendant UNITE HERE EDUCATION AND SUPPORT FUND (hereinafter "Defendant Unite Here") is affiliated with Defendant Union and is a related labor organization and/or affiliated entity.

5. At all relevant times, DOES 1 through 20, inclusive, and each of them, were legal entities or individuals. That the true names and capacities, whether individual, corporate, agents, association, or otherwise of the Defendants, DOES 1 through 20, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff is informed, believes, and thereon alleges that each of the Defendants designated herein as DOES are responsible in some manner for the events and happenings herein referred to, and in some manner proximately caused the damages to Plaintiff, as herein alleged. Plaintiff will ask leave of the Court to amend this Complaint to insert the true names and capacities of DOES 1 through 20 and state appropriate charging allegations when that information has been ascertained.

6. At all times hereinafter, Defendant Union, Defendant Unite Here, and DOES 1 through 20 will be collectively referred to as "Defendants."

7. At all times relevant hereto, Defendants were agents, servants, employees, or joint ventures of every other Defendant, and at all times mentioned herein were acting within the scope and course of said agency, employment, or joint venture with knowledge, permission, and consent of all other Defendants.

## III.
## JURISDICTION AND VENUE

8. This Court has jurisdiction over this matter, and venue is proper, pursuant to 28 U.S.C § 1331, as this matter involves actions arising under federal law.

9. This Court has supplemental jurisdiction over all other claims in this matter pursuant to 28 U.S.C. § 1367 because they are so related to the federal claims in this action that they form the same case or controversy under Article III of the United States Constitution.

10. Jurisdiction is also proper because Defendants are licensed to and regularly conduct business in the State of Nevada.

11. Venue is proper in this Court pursuant to 28 U.S.C § 1391(b) because a substantial part of the events and omissions giving rise to this action occurred in the State of Nevada and all Defendants are subject to this Court's exercise of personal jurisdiction.

## IV.
## ADMINISTRATIVE PREREQUISITES

12. Plaintiff has complied with all the administrative prerequisites to this action as she timely filed a Charge with the U.S. Equal Employment Opportunity Commission ("EEOC") and was issued a Notice of Right to Sue on April 27, 2026. A true and correct copy of Plaintiff's EEOC Charge of Discrimination is attached hereto as Exhibit "1," and a true and correct copy of Plaintiff's Notice of Right to Sue Letter is attached hereto as Exhibit "2."

## V.
## GENERAL ALLEGATIONS

13. At all times relevant herein, Plaintiff was employed as a housekeeper at Caesars Palace in Las Vegas, Nevada.

14. At all times relevant herein, Plaintiff was a member of Defendant Union.

15. In or around September 2021, Plaintiff began working with Defendant Union as a Union Organizer while on a leave of absence from Caesars Palace, which allowed Plaintiff to return to her original position at Caesars Palace without affecting her pay or seniority.

16. At all times relevant herein, Mario Medina (hereinafter "Mr. Medina") was a Union Director for Defendant Union and exercised authority and/or influence over Plaintiff's Union assignments, volunteer opportunities, committee status, and shop steward activities.

17. Beginning in or around March 2024, Mr. Medina began subjecting Plaintiff to a course of unwelcome and harassing conduct, which later escalated into explicit sexual harassment and quid pro quo demands.

18. In or around March 2024, Plaintiff was unable to attend work for two (2) days due to a documented case of pneumonia, for which she obtained a doctor's note excusing her absence from work.

19. Despite the legitimacy and seriousness of Plaintiff's illness, Mr. Medina condescendingly asked Plaintiff, in front of other staff members, whether she intended to continue requesting days off.

20. Mr. Medina repeatedly made comments about Plaintiff taking days off, being "unreliable," and "not being a good example" for other staff members.

21. Around the same period, Plaintiff asked Mr. Medina who she could contact to request bereavement time off to attend her grandmother's funeral.

22. In response, Mr. Medina accused Plaintiff of asking for too many days off and again told Plaintiff she was not a good example.

23. On or about April 15, 2024, during a meeting with Mr. Medina and Johanna Dalton (hereinafter "Ms. Dalton"), Mr. Medina accused Plaintiff of "dishonesty" and of doing her job improperly.

24. When Plaintiff asked for clarification and requested that Ms. Dalton investigate the accusation, Ms. Dalton told Plaintiff she did not have time to investigate because she had "too many meetings."

25. On or about April 18, 2024, Plaintiff met with Ted Pappageorge and Diana Valles to discuss Mr. Medina's harassment and unwelcome conduct.

26. Shortly thereafter, on or about April 24, 2024, Defendant Union ended Plaintiff's Union Organizer assignment early and sent Plaintiff back to Caesars Palace, even though Plaintiff understood that her assignment was scheduled to continue until July 2024.

27. Upon information and belief, Defendant Union revoked Plaintiff's Union Organizer assignment early in direct retaliation for Plaintiff's reporting of, and opposition to, Mr. Medina's harassing and discriminatory conduct.

28. After Plaintiff returned to Caesars Palace, she remained a member of Defendant Union and continued acting as a Shop Steward.

29. In or around May 2024, Plaintiff was invited to a city-wide event with Defendant Union, but she was unable to attend because her doctor had placed her on a no-walking restriction due to an injury.

30. In response, Gina from Defendant Union stated, "Come on lady! Seems like you don't want to get involved anymore."

31. On or about May 29, 2024, Plaintiff sent an email to Ted Pappageorge, Diana Valles, Sara Varela, Rowena Hammett, and Esther Dyer detailing Mr. Medina's comments toward her, the dishonesty accusation, her request for an investigation, and her belief that Defendant Union had sent her back to

Caesars Palace early in retaliation. A true and correct copy of Plaintiff's May 29, 2024, written complaint is attached hereto as Exhibit "3."

32. Upon information and belief, Defendant Union did not conduct any investigation or discipline Mr. Medina in any way as a result of Plaintiff's May 29, 2024, complaint.

33. In or around June 2025, Mr. Medina was assigned to Caesars Palace, where Plaintiff continued working as a housekeeper and Shop Steward.

34. After Mr. Medina was assigned to Caesars Palace, he gradually excluded Plaintiff from Union activities.

35. Mr. Medina told Plaintiff that she did not need to be a "superstar" in her role as a Shop Steward and that she should "step aside" to allow other Shop Stewards to "shine."

36. In or around July 2025, during a Shop Stewards meeting led by Mr. Medina, Plaintiff and others discussed complaints that had been emailed to Defendant Union executives.

37. During that meeting, Mr. Medina questioned whether Plaintiff had written the email and then stated, "I thought you couldn't write," embarrassing Plaintiff in front of her coworkers.

38. In or around late July 2025, Plaintiff began the process of volunteering with Defendant Union's grievance department, which required her to sign a confidentiality agreement.

39. After Plaintiff signed the confidentiality agreement, she was told she could not start yet because no one was available to train her.

40. Mr. Medina then told Plaintiff that he was the Union Director and would decide who would train her and who would volunteer based on their behavior toward him.

41. Around this time, Plaintiff began noticing that Union organizers were becoming more distant and excluding her from Union activities.

42. Xochil Mendez (hereinafter "Ms. Mendez"), a Union Organizer with Defendant Union, repeatedly asked Plaintiff to take a break from her position as a Shop Steward and emphasized that there would be adverse consequences if Plaintiff did not step down from that position.

43. After a Union meeting on or about July 20, 2025, Mr. Medina told Plaintiff that he had helped multiple individuals get promoted after having sex with him.

44. Plaintiff later got into an argument with Ms. Mendez about Mr. Medina withholding information from Plaintiff, and Ms. Mendez continued telling Plaintiff that she needed to take a break from the Union.

45. On or about August 5, 2025, Plaintiff was removed from her position as Shop Steward.

46. A few weeks later, Plaintiff asked Mr. Medina about an upcoming Union meeting.

47. Mr. Medina informed Plaintiff that she was no longer a Shop Steward, said, “Now you need daddy,” and told Plaintiff, “You know what you have to do if you want to be back.:

48. When Plaintiff asked Mr. Medina what he meant, he stated “I can give you a position at the Union or get you back on the committee if you are nice to me. What can you lose? Sleep with me. I have the power to put you back if I want.”

49. Mr. Medina also told Plaintiff that she would “never” work for Defendant Union again unless she had sex with him.

50. Plaintiff then reached out to Human Resources personnel at Caesars Palace to report the harassment and retaliation from Defendant Union.

51. Plaintiff reported the harassment and retaliation in a written employee statement. A true and correct copy of Plaintiff’s March 11, 2026, employee statement is attached hereto as Exhibit “4.”

52. Despite Plaintiff’s complaint to Caesars Palace, no investigation or meeting was held, even though the conduct was occurring on Caesars Palace property.

53. Plaintiff also tried to reach management personnel at Defendant Union regarding the harassment and retaliation, but her complaints were ignored.

54. Despite Plaintiff’s complaints, Mr. Medina’s placement at Caesars Palace continued, as did his harassing behavior toward Plaintiff.

55. Mr. Medina began staring at Plaintiff’s behind inappropriately and made unwelcome sexual comments about Plaintiff’s body, including comments about “how fat” her behind was getting.

56. On or about April 8, 2026, Defendant Union acknowledged Plaintiff’s sexual harassment complaint in writing. A true and correct copy of Defendant Union’s April 8, 2026, correspondence is attached hereto as Exhibit “5.”

57. On or about April 14, 2026, Plaintiff again documented Mr. Medina's harassment and Defendant Union's failure to respond in writing to Defendant Union. A true and correct copy of Plaintiff's April 14, 2026, email is attached hereto as Exhibit "6."

58. On or about April 15, 2026, Defendant Union again acknowledged Plaintiff's sexual harassment complaint and the need for an investigation. A true and correct copy of Defendant Union's April 15, 2026, response is attached hereto as Exhibit "7."

59. Plaintiff remains employed with Caesars Palace.

## VI.
## FIRST CAUSE OF ACTION
### (Sex-Based Discrimination and Hostile Work Environment in Violation of Title VII Against All Defendants)

60. Plaintiff incorporates by this reference each and every allegation made in this Complaint as if fully set forth herein.

61. Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII") makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise *to discriminate against* any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, *sex*, or national origin."[1]

62. Plaintiff is a woman and is therefore a member of a protected class under Title VII on the basis of sex.

63. Throughout her employment and involvement with Defendant Union, Plaintiff was subjected to several incidents of unwelcome conduct based on sex, including repeated and inappropriate comments, sexualized behavior, and gender-based derogatory language.

64. This conduct included, but was not limited to:

a. Mr. Medina telling Plaintiff she was unreliable and not a good example;

b. Mr. Medina baselessly accusing Plaintiff of being dishonest and doing her job poorly;

c. Defendant Union ending Plaintiff's Union Organizer assignment early;

d. Being excluded from Union activities;

e. Mr. Medina telling Plaintiff she should "step aside" and let others "shine;"

[1] 42 U.S.C. § 2000e-2(a)(1) (emphasis added).

f. Mr. Medina telling Plaintiff, "I thought you couldn't write;"

g. Mr. Medina hindering Plaintiff's ability to volunteer with grievance department;

h. Being removed from her position as Shop Steward;

i. Mr. Medina telling Plaintiff the only way she could get involved with the Union again was to have sex with him;

j. Ignoring Plaintiff's repeated complaints about the discriminatory and harassing conduct she was being subjected to; and

k. Mr. Medina staring at Plaintiff's behind and making comments about her body.

65. The conduct described above was motivated by sex-based animus, was directed at Plaintiff because of her sex, and was not experienced by similarly situated male employees.

66. Plaintiff was embarrassed, horrified, and disturbed by this conduct.

67. Defendants' actions and inactions created a work environment that was both subjectively offensive to Plaintiff and objectively hostile and abusive to a reasonable person in her position, and the harassment was sufficiently severe and pervasive to alter the terms and conditions of Plaintiff's employment.

68. Defendants failed to take reasonable steps to prevent or correct this harassing conduct.

69. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages, including but not limited to lost wages, lost benefits, emotional distress, and humiliation.

70. It has also been necessary for Plaintiff to obtain the services of an attorney to pursue this claim, and Plaintiff is thus entitled to recover reasonable attorney's fees and costs.[2]

## VII.
## SECOND CAUSE OF ACTION
## (Sex-Based Discrimination and Hostile Work Environment in Violation of Nevada Law Against All Defendants)

71. Plaintiff incorporates by this reference each and every allegation made in this Complaint as if fully set forth herein.

72. Nevada State law makes it unlawful for an employer to "fail or refuse to hire or to discharge any person, or otherwise *to discriminate against* any person with respect to the person's compensation,

---

[2] 42 U.S.C. § 2000e-5(k).

terms, conditions or privileges of employment, because of his or her race, color, religion, *sex*, sexual orientation, gender identity or expression, age, disability, or national origin.[3]

73. Plaintiff is a woman and is therefore a member of a protected class under Nevada law on the basis of sex.

74. Throughout her employment and involvement with Defendant Union, Plaintiff was subjected to several incidents of unwelcome conduct based on sex, including repeated and inappropriate comments, sexualized behavior, and gender-based derogatory language.

75. This conduct included, but was not limited to:

a. Mr. Medina telling Plaintiff she was unreliable and not a good example;

b. Mr. Medina baselessly accusing Plaintiff of being dishonest and doing her job poorly;

c. Defendant Union ending Plaintiff's Union Organizer assignment early;

d. Being excluded from Union activities;

e. Mr. Medina telling Plaintiff she should "step aside" and let others "shine;"

f. Mr. Medina telling Plaintiff, "I thought you couldn't write;"

g. Mr. Medina hindering Plaintiff's ability to volunteer with grievance department;

h. Being removed from her position as Shop Steward;

i. Mr. Medina telling Plaintiff the only way she could get involved with the Union again was to have sex with him;

j. Ignoring Plaintiff's repeated complaints about the discriminatory and harassing conduct she was being subjected to; and

k. Mr. Medina staring at Plaintiff's behind and making comments about her body.

76. The conduct described above was motivated by sex-based animus, was directed at Plaintiff because of her sex, and was not experienced by similarly situated male employees.

77. Plaintiff was embarrassed, horrified, and disturbed by this conduct.

78. Defendants' actions and inactions created a work environment that was both subjectively offensive to Plaintiff and objectively hostile and abusive to a reasonable person in her position, and the harassment was sufficiently severe and pervasive to alter the terms and conditions of Plaintiff's employment.

---

[3] N.R.S. § 613.330(1)(a) (emphasis added).

79. Defendants failed to take reasonable steps to prevent or correct this harassing conduct.

80. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages, including but not limited to lost wages, lost benefits, emotional distress, and humiliation.

81. It has also been necessary for Plaintiff to obtain the services of an attorney to pursue this claim, and Plaintiff is thus entitled to recover reasonable attorney's fees and costs.

## VIII.
## THIRD CAUSE OF ACTION
## (Retaliation in Violation of Title VII Against All Defendants)

82. Plaintiff incorporates by this reference each and every allegation made in this Complaint as if fully set forth herein.

83. Title VII makes it unlawful for an employer "to discriminate against any of his employees or applicants for employment … because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."[4]

84. Plaintiff engaged in protected activity under Title VII when she opposed and reported sexual harassment, sex-based discrimination, and retaliation to Defendant Union, Caesars Palace Human Resources, and the Equal Employment Opportunity Commission.

85. Defendants were aware of Plaintiff's protected activity, as her complaints were made directly to Defendants' and/or their management.

86. After engaging in protected activity, Plaintiff was subjected to materially adverse employment actions, including but not limited to:

a. Defendant Union ending Plaintiff's Union Organizer assignment early;

b. Being excluded from Union activities;

c. Mr. Medina telling Plaintiff she should "step aside" and let others "shine;"

d. Mr. Medina telling Plaintiff, "I thought you couldn't write;"

e. Mr. Medina hindering Plaintiff's ability to volunteer with grievance department;

f. Being removed from her position as Shop Steward;

---

[4] 42 U.S.C. § 2000e-3(a).

g. Mr. Medina telling Plaintiff the only way she could get involved with the Union again was to have sex with him; and

h. Ignoring Plaintiff's repeated complaints about the discriminatory and harassing conduct she was being subjected to.

87. These actions were materially adverse and would dissuade a reasonable employee from making or supporting complaints of discrimination or harassment.

88. Defendants' retaliatory conduct was causally connected to Plaintiff's protected activity, as evidenced by the temporal proximity between Plaintiff's complaints and the escalation of hostility, discipline, and intimidation directed toward her.[5]

89. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages, including but not limited to lost wages, lost benefits, emotional distress, and humiliation.

90. It has also been necessary for Plaintiff to obtain the services of an attorney to pursue this claim, and Plaintiff is thus entitled to recover reasonable attorney's fees and costs.[6]

## IX.
## FOURTH CAUSE OF ACTION
## (Retaliation in Violation of Nevada Law Against All Defendants)

91. Plaintiff incorporates by this reference each and every allegation made in this Complaint as if fully set forth herein.

92. Nevada State law makes it unlawful for an employer to "discriminate against any of his or her employees … because the employee … has opposed any … unlawful employment practice."[7]

93. Plaintiff engaged in protected activity under Nevada law when she opposed and reported sexual harassment, sex-based discrimination, and retaliation to Defendant Union, Caesars Palace Human Resources, and the Equal Employment Opportunity Commission.

94. Defendants were aware of Plaintiff's protected activity, as her complaints were made directly

---

[5] See e.g., *Pardi v. Kaiser Found. Hosp.*, 389 F.3d 820, 850 (9th Cir. 2004) ("The temporal proximity between Pardi's protected activities and Kaiser's adverse acts sufficiently raises an inference of a causal link"); Bell v. Clackamas Cnty., 341 F.3d 858, 865-55 (9th Cir. 2003) (holding that proximity in time may by itself constitute circumstantial evidence of retaliation).

[6] 42 U.S.C. § 2000e-5(k).

[7] N.R.S. § 613.340(1).

to Defendants' and/or their management.

95. After engaging in protected activity, Plaintiff was subjected to materially adverse employment actions, including but not limited to:

a. Defendant Union ending Plaintiff's Union Organizer assignment early;

b. Being excluded from Union activities;

c. Mr. Medina telling Plaintiff she should "step aside" and let others "shine;"

d. Mr. Medina telling Plaintiff, "I thought you couldn't write;"

e. Mr. Medina hindering Plaintiff's ability to volunteer with grievance department;

f. Being removed from her position as Shop Steward;

g. Mr. Medina telling Plaintiff the only way she could get involved with the Union again was to have sex with him; and

h. Ignoring Plaintiff's repeated complaints about the discriminatory and harassing conduct she was being subjected to.

96. These actions were materially adverse and would dissuade a reasonable employee from making or supporting complaints of discrimination or harassment.

97. Defendants' retaliatory conduct was causally connected to Plaintiff's protected activity, as evidenced by the temporal proximity between Plaintiff's complaints and the escalation of hostility, discipline, and intimidation directed toward her.[8]

98. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages, including but not limited to lost wages, lost benefits, emotional distress, and humiliation.

99. It has also been necessary for Plaintiff to obtain the services of an attorney to pursue this claim, and Plaintiff is thus entitled to recover reasonable attorney's fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff ELIZABETH RENTERIA, reserving the right to amend this Complaint

[8] See e.g., *Pardi v. Kaiser Found. Hosp.*, 389 F.3d 820, 850 (9th Cir. 2004) ("The temporal proximity between Pardi's protected activities and Kaiser's adverse acts sufficiently raises an inference of a causal link"); Bell v. Clackamas Cnty., 341 F.3d 858, 865-55 (9th Cir. 2003) (holding that proximity in time may by itself constitute circumstantial evidence of retaliation).

at the time of trial to include all items of damages not yet ascertained, prays judgment against Defendants as follows:

1. For general damages;
2. For special damages;
3. For costs of suit and reasonable attorney's fees;
4. For injunctive relief prohibiting Defendants from engaging in unlawful employment practices;
5. For an award of prejudgment interest on the said sum;
6. For an award of post-judgment interest;
7. For any and all further relief the Court deems just and proper.

DATED this 24th day of July 2026.

**THE BOURASSA LAW GROUP**

By: */s/ Mark J. Bourassa*

MARK J. BOURASSA, ESQ. (NBN 7999)
2350 W. Charleston Blvd.
Las Vegas, Nevada 89102

*Attorney for Plaintiff*

**DEMAND FOR JURY TRIAL**

Plaintiff, by and through her counsel of record, The Bourassa Law Group, hereby demands a jury trial of all the issues in the above matter.

DATED this 24th day of July 2026.

**THE BOURASSA LAW GROUP**

By: */s/ Mark J. Bourassa*
MARK J. BOURASSA, ESQ. (NBN 7999)
2350 W. Charleston Blvd.
Las Vegas, Nevada 89102

*Attorney for Plaintiff*

**VERIFICATION**

Under penalties of perjury, I declare that I am the Plaintiff named in the foregoing Verified Complaint and Jury Demand and know the contents thereof; that the pleading is true of my own knowledge, except as to those matters stated on information and belief, and that as to such matters I believe them to be true. I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct.

Dated this 23rd day of July 2026.

Signed by:
E687451E8ACF4B5...

ELIZABETH RENTERIA